IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JIMMIE L. GULLY, ) | Case No. 05-62030 |
| ) | |
| Debtor. ) | |
| ) | |
| ANDREA G. GULLY, ) | Adversary No. 05-6106 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JIMMIE L. GULLY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Andrea G. Gully filed this proceeding to determine the dischargeability of certain debts awarded to her former spouse, debtor/defendant Jimmie L. Gully, at the time of the dissolution of the parties' marriage. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find the debts to be dischargeable.

## BACKGROUND FACTS

Andrea and Jimmie were married on July 28, 1995. They have no children. They separated on September 27, 2004, and, on or about November 23, 2004, the Circuit Court

of Douglas County, Missouri, entered a Judgment, Order and Decree of Dissolution of Marriage, which was amended *nunc pro tunc* on July 12, 2005, to correct a scrivener's error regarding the identity of a secured creditor (collectively, the "Dissolution Decree"). The Dissolution Decree approved, and incorporated the terms of, a Separation and Property Settlement Agreement executed by the parties on or about October 11, 2004 (the "Property Settlement Agreement"). As relevant here, the Property Settlement Agreement and Dissolution Decree awarded fee simple title and ownership in the parties' marital home to Andrea. Jimmie was obligated to pay the indebtedness owed on the home to two secured creditors, Max and Wanda Murphy (a/k/a Area Land Realty) and Great Southern Bank,[1] which were in the amounts of approximately $10,000 and $8,000, respectively. In accordance with the Dissolution Decree, Jimmie quitclaimed his interest in the property to Andrea. Although Jimmie made the payments on the obligations to the Murphys and Great Southern Bank through April of this year, he has since defaulted on those payments.

On July 21, 2005, Jimmie filed a voluntary petition under Chapter 7 of the Bankruptcy Code. He listed his interest in the real property on his bankruptcy schedules, but indicated he had quitclaimed the deed to Andrea pursuant to the Dissolution Decree and that he intended to surrender whatever interest he had in that property to her. He valued the property at $27,000. He listed the debts to the Murphys and Great Southern Bank as secured debts

---

[1] Although the parties refer to this debt as owing to Great Southern Bank, the Property Settlement Agreement appears to refer to this lender as "Beneficial." Although it makes no difference as to the outcome of this decision, I presume this is the same debt and will refer to the lender as Great Southern Bank.

secured by the property, and identified Andrea as a co-debtor on those obligations.

On September 19, 2005, Andrea filed an adversary action in Jimmie's bankruptcy case, asserting that Jimmie's obligation to make the payments to the Murphys and Great Southern Bank are nondischargeable under 11 U.S.C. §§ 523(a)(5) and (a)(15).

## DISCUSSION

Andrea brings this cause of action pursuant to 11 U.S.C. § 523(a)(5) and (a)(15). As relevant here, section 523(a)(5) excepts from discharge any debt owed:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . , or property settlement agreement, but not to the extent that –
>
> * * *
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.[2]

Andrea asserts that the Dissolution Decree's requirements that Jimmie make the payments on the obligations owed to the Murphys and Great Southern Bank are in the nature of alimony or maintenance and are, therefore, nondischargeable.

It is the actual nature of the debt which determines whether it is dischargeable under §523(a)(5) and Andrea bears the burden of proof on this issue.[3]  Whether a particular debt

---

[2] 11 U.S.C. § 523(a)(5).  Note that this provision was modified, effective as to cases filed after October 17, 2005.  Because Jimmie's case was filed before that date, however, the former provision applies.

[3] *Scholl v. McLain (In re McLain),* 241 B.R. 415, 419 (B.A.P. 8th Cir. 1999).

constitutes a maintenance or support obligation is governed by federal bankruptcy law, not by state law.[4]  "The crucial issue in making this determination is the intent of the parties and the function the award was intended to serve at the time of the divorce."[5]  Factors to be considered by the courts in determining whether an award arising out of marital dissolution proceedings was intended to serve as an award for alimony, maintenance or support, or whether it was intended to serve as a property settlement, include, but are not limited to: (1) the relative financial conditions of the parties at the time of the divorce; (2) the respective employment histories and prospects for financial support; (3) the fact that one party or another receives the marital property; (4) the periodic nature of the payments; and (5) whether it would be difficult for the former spouse and children to subsist without the payments.[6]  Additional factors might include whether the obligation terminates on death or remarriage, the tax treatment of the obligation, and the label given the obligation in the decree.[7]

In this case, the parties presented evidence and testimony showing that, at the time of the divorce, Andrea and Jimmie were similarly situated financially.  The Property Settlement Agreement indicates that neither of the parties had any significant assets at that time, other

---

[4] *Id.*

[5] *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 55 (B.A.P. 8th Cir. 1997); *McLain*, 241 B.R. at 419.

[6] *Id.*

[7] *See Portwood v. Young (In re Portwood)*, 308 B.R. 351, 356 (B.A.P. 8th Cir. 2004); *Beggs v. Niewdach (In re Beggs)*, 314 B.R. 401, 416 (Bankr. E.D. Ark. 2004).

than the house and two older model vehicles. The Property Settlement Agreement awarded to Jimmie a 1989 Ford EXP; all of the personal property located on the upstairs floor of the parties' residence; and all of his clothing, jewelry and personal effects. Andrea was awarded a 1999 Chevrolet Tracker; the parties' marital residence situated on 9.5 acres in Ava, Missouri; all of the personal property located on the downstairs floor of the parties' residence; all property in her possession at the time of the entry of the Dissolution Decree not otherwise listed; and all of her clothing, jewelry, and personal effects.

As to the marital debts, Jimmie was ordered to assume, and hold Andrea harmless from, the following marital debts:

1) the indebtedness owed on the 1999 Chevrolet Tracker to Great Southern Bank in the approximate amount of $5,700;
2) the indebtedness owed to Beneficial in the approximate amount of $8,000;
3) the indebtedness owed on the home and 9.5 acres of real estate to the Murphys in the approximate amount of $10,000;
4) all indebtedness owed on the Master Card credit card, in the approximate amount of $2,000;
5) all of the indebtedness owed by Jimmie prior to the parties' marriage;
6) all indebtedness not specifically mentioned that was incurred by Jimmie since the date of separation of the parties; and
7) all indebtedness listed solely in Jimmie's name.

Andrea was ordered to assume, and hold Jimmie harmless from the following marital debts:

1) all cellular telephone charges on Andrea's cellular telephone;
2) all indebtedness owed by Andrea prior to the parties' marriage;
3) all indebtedness not specifically mentioned herein and incurred by Andrea since the date of the separation of the parties; and
4) all indebtedness listed solely in Andrea's name.

With respect to their respective employment histories and earning capacity, the Debtor

testified that, when the parties met in the summer of 1994, Andrea was Jimmie's supervisor at Wells Fargo. The parties further testified that, at the time of the divorce, both Andrea and Jimmie were employed and that Jimmie was making slightly more money than Andrea was at that time. Andrea testified she was earning $7.50 per hour at the time of the divorce. The Debtor testified that both he and Andrea were physically healthy during the marriage and, other than stress issues caused by the separation and divorce, they were both healthy at the time of the divorce.

Turning to the documentary evidence, although the labels given to awards in dissolution decrees and settlement agreements are certainly not determinative, the language used in those documents can nevertheless be persuasive.[8] As stated above, it is the intent of the parties *at the time of the divorce* that is relevant, and the fact that those documents were created at the relevant time makes them rather reliable evidence of the parties' intent at that time. In this case, the Property Settlement Agreement and Dissolution Decree do not merely label the award of the house to Andrea, and the corresponding allocation of the debts secured by the house to Jimmie, as property division; rather, the documents in this case contain relatively strong language regarding the issue of alimony. Specifically, both the original Dissolution Decree and the Amended Dissolution Decree provide that *"[n]either party is in need of, nor entitled to maintenance,"* and order that "[n]either party is ordered to pay

---

[8] *See e.g., In re McLain*, 241 B.R. at 419 (holding that the state court's intent and the parties' intent at the time of the divorce was patent from the stipulation between the parties and the state court's order accepting and incorporating the stipulation).

maintenance." In addition, the Property Settlement Agreement provides, in part:

> As part of the consideration for the execution of this Agreement, the parties hereto do mutually release the other from all obligations for the support of the other and from all rights and claims arising by reason of their marriage or otherwise, including dower, courtesy, homestead, alimony, separate maintenance and alimony, with each party understanding that they are waiving or giving up their right to later return to Court and request same.

This language is a strong indication that, at the time of the divorce, the parties did not intend to award either party maintenance.

In addition, the Dissolution Decree and Property Settlement Agreement require Jimmie to pay these debts in full, regardless of the length of time it would take to repay them. They contain no provision for the termination of the obligation due to Andrea's death or remarriage, which is another indication that the parties did not intend it to be in lieu of maintenance.

Although Andrea testified at the hearing in this case that she thought the award was in lieu of maintenance, I find that her testimony lacked credibility. The terms of the Dissolution Decree and Property Settlement Agreement are unambiguous as to the representation that neither party was in need of, nor entitled to, maintenance, and she testified she signed the Agreement willingly. Further, there is no reason to suspect that Andrea entered the Property Settlement Agreement lightly or without careful consideration,[9] particularly since Andrea was represented by counsel in the divorce action, and Jimmie was not. In addition, the state court entered the Dissolution Decree incorporating the Property

---

[9] *Id*. at 419-20.

Settlement Agreement and there is "no reason to conclude that the state court possessed any intentions other than those enumerated by the express terms of its order and the stipulation."[10]

I find, therefore, based on the unambiguous language of the Property Settlement Agreement and Dissolution Decree, as well as the evidence regarding the parties' relative financial conditions and income as they existed at the time of the divorce, that Jimmie's obligation to make the payments, and hold Andrea harmless, on the obligations to the Murphys and Great Southern Bank are not in the nature of alimony, maintenance, or support, but were intended to be a part of the property division. Andrea has therefore failed to meet her burden of showing that they are nondischargeable under § 523(a)(5).

Having concluded that these obligations were a property division, Andrea next argues that the obligations should be declared nondischargeable under §523(a)(15). As applicable to this case, section 523(a)(15) of the Bankruptcy Code excepts from discharge a property settlement obligation if the debtor has the ability to pay the obligation, and if failing to discharge the obligation confers a greater benefit on the nondebtor than the detriment it imposes on the debtor:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> . . .
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other

---

[10] *Id*. at 420.

> order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
>
> > (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, and if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> >
> > (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.[11]

By its language, this version of section 523(a)(15) sets up a rebuttable presumption that any property settlement obligation arising from a divorce is nondischargeable.[12] Thus, once a former spouse brings a dischargeability action under § 523(a)(15), and proves the debt arises as part of the property settlement in a dissolution proceeding, the burden of proof shifts to the debtor to show that either of the two exceptions to nondischargeability contained in subsections (A) or (B) applies.[13] Section 523(a)(15) determinations are based on facts and circumstances as of the date of trial, not as of the date of the divorce.[14]

---

[11] 11 U.S.C. § 523(a)(15). Note that for cases filed after October 17, 2005, this provision was amended to provide that all property settlement obligations are nondischargeable in Chapter 7 cases. Again, however, this case was filed before October 17, 2005, so the prior provision applies.

[12] *See Becker v. Becker (In re Becker)*, 185 B.R. 567, 569 (Bankr. W.D. Mo. 1995).

[13] *In re Moeder*, 220 B.R. at 56.

[14] *See In re Beggs*, 314 B.R. at 416.

Jimmie's schedules show that, at the time he filed his bankruptcy petition, he earned gross income of $1,742 per month in Patient Care at Cox Medical Center. After deductions for taxes and insurance, his net monthly income was $1,360.67. Jimmie incurs monthly expenses, not including the monthly payments to the Murphys and Great Southern Bank, as follows:

| | |
|---|---|
| Rent | $ 325.00 |
| Electricity and heating fuel | $ 200.00 |
| Water and sewer | $ 50.00 |
| Telephone | $ 40.00 |
| Cell Phone | $ 50.00 |
| Internet Service Provider | $ 30.00 |
| Home maintenance | $ 20.00 |
| Food | $ 225.00 |
| Clothing | $ 50.00 |
| Laundry and dry cleaning | $ 25.00 |
| Medical and dental expense | $ 25.00 |
| Transportation (not including car payments) | $ 150.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 125.00 |
| Trash pickup | $ 15.00 |
| Household Goods | $ 65.00 |
| Tobacco | $ 50.00 |
| Work uniforms | $ 25.00 |
| Total | $1,470.00 |

Jimmie's schedules show that his expenses, which appear to be reasonable, already exceed his income by $110.00 per month, not even considering the monthly payments to the Murphys and Great Southern Bank in the amounts of $275 and $75, respectively. Furthermore, Jimmie testified at the hearing that he is no longer working at Cox, and is currently employed at a temp agency, earning significantly less than he was making when he filed his schedules. In fact, he testified that he is currently living with his sister and has had to borrow a car from his brother because he cannot afford to pay for those things with

10

his current income. Further, Jimmie lists no significant assets in his bankruptcy schedules and the Trustee has filed his Report of No Distribution, finding that there are no assets to administer in this case.

I find, based on Jimmie's bankruptcy schedules and the testimony presented at hearing, that Jimmie does not have the ability to pay the debts to the Murphys and Great Southern Bank from current income or property not reasonably necessary for his support, and that his ability to make such payments will not improve in the foreseeable future. As a result, Jimmy has met his burden of proving an affirmative defense to nondischargeability pursuant to § 523(a)(15)(A). Because subsections (A) and (B) are alternative provisions, I need not decide whether he has met his burden as to the affirmative defense provided under subsection (B).[15]

Accordingly, for the foregoing reasons, I find in favor of the debtor/defendant Jimmie L. Gully and find that Jimmie's obligations to Max and Wanda Murphy (a/k/a Area Land Realty) and Great Southern Bank, and to hold Plaintiff Andrea G. Gully harmless thereon, pursuant to the Dissolution Decree entered in the Circuit Court of Douglas County, Missouri, are dischargeable.

An Order is accordance with this Memorandum Opinion will be entered this date.

---

[15] *See Fellner v. Fellner (In re Fellner)*, 256 B.R. 898, 903 (B.A.P. 8th Cir. 2001) (holding that if the debtor can prove either of the exceptions exists, then the debt should be discharged).

<u>/s/ Arthur B. Federman</u>
Bankruptcy Judge

Date: December 14, 2005

Copy to: Donald L. Sanders
        Marc D. Licata